## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOSEPH MCMANUS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-1533** |
| **ST. TAMMANY PARISH JAIL** | **SECTION "B"(2)** |

### ORDER AND REASONS

Before the Court are defendants Randy Smith and Daniel Fleischman's[1] motion for summary judgment, **R. Doc. 35**; defendants Randy Smith and Daniel Fleischman's motion to dismiss, which re-urges their previously filed motion for summary judgment, **R. Doc. 43**; plaintiff Joseph McManus's opposition to defendants Randy Smith and Daniel Fleischman's motion to dismiss, R. Doc. 44; defendants Randy Smith and Daniel Fleischman's reply in support of their motion to dismiss, R. Doc. 47; and plaintiff Joseph McManus's sur-reply to defendants Randy Smith and Daniel Fleischman's motion to dismiss, R. Doc. 50.

For the following reasons,

**IT IS ORDERED** that defendants Randy Smith and Daniel Fleischman's motion for summary judgment, R. Doc. 35, and motion to dismiss re-urging their motion for summary judgment, R. Doc. 43, are **GRANTED**, and that all plaintiff Joseph McManus's claims against defendants Randy Smith and Daniel Fleischman be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that defendant St. Tammany Parish Jail be **DISMISSED WITH PREJUDICE** from this action because it is not  subject to suit under § 1983.  *See, e.g.*, *Robinson v. Pinion*, No. 05-6364, 2006 WL 2710443, at *3 (E.D. La. Sept. 19, 2006).

---

[1]      Plaintiff Joseph McManus's amended complaint names "Daniel Fleischmanand"  as a defendant.  See R. Doc. 12.  However, the correct spelling of his last name is "Fleischman."  *See, e.g.*, R. Doc. 17.

**BACKGROUND**

On August 13, 2020, plaintiff Joseph McManus ("McManus") was arrested by the St. Tammany Parish Sheriff's Office on charges of obstructing public passages, resisting an officer, and battery of a police officer.[2] He was subsequently booked into the St. Tammany Parish Jail ("STPJ") as a pre-trial detainee and placed into a male holding cell ("Holding Cell") on August 14, 2020, at 1:57 a.m.[3] McManus remained in the Holding Cell from August 14, 2020, at 1:57 a.m. until 2:39 p.m., i.e., for approximately twelve (12) hours.[4] While it is undisputed that while in the Holding Cell, McManus was able to take a shower,[5] sleep,[6] and was provided with a blanket;[7] McManus says he was subjected to the following while in the Holding Cell and at STPJ:

(1) Dirty conditions within the Holding Cell

(2) Being forced to sleep on the concrete floor of the Holding Cell;

(3) Dirty conditions in the showers (Specifically, McManus alleges he had to stand in between six (6) inches to one (1) foot of water to take a shower.);

(4) Holes in the blanket STPJ provided him;

(5) Rude/mean comments made to him by STPJ personnel (Specifically, McManus alleges he was made fun of by an unidentified "cop.");[8]

(6) Inadequate medical treatment (Specifically, McManus alleges that he had two panic attacks; that he was denied proper medical treatment when he allegedly suffered his first panic attack; that he had to wait for two hours to be seen by STPJ medical personnel when

---

[2]        R. Doc. 35-2 at 1 ¶¶ 1–2 (citing R. Doc. 35-4 at 1).

[3]        R. Doc. 35-5 at 1 ¶ 2 (first citing R. Doc. 35-4 at 1; and then citing R. Doc. 35-5). The Cell Assignment report attached to Defendant's Motion for Summary Judgment (R. Doc. 35-5) shows that McManus was booked into male holding cell 1 with six (6) other male arrestees. *See* R. Doc. 35-5.

[4]        R. Doc. 35-2 at 1 ¶ 3 (citing R. Doc. 35-4 at 24).

[5]        *Id.* at 2 ¶ 4. This fact is deemed admitted pursuant to Local Rule 56.2 because McManus did not controvert it. *See* LR 56.2.

[6]        Id. at 2 ¶ 5.  This fact is deemed admitted pursuant to Local Rule 56.2 because McManus did not controvert it. *See* LR 56.2.

[7]        *Id.* at 2 ¶ 6.  This fact is deemed admitted pursuant to Local Rule 56.2 because McManus did not controvert it. *See* LR 56.2.

[8]        McManus provides no more factual support than this anywhere in the record; he does not identify the name of the "cop" who allegedly made fun of him, nor does he allege what the "cop" allegedly stated.

he had his second alleged panic attack; and that when he finally saw STPJ medical personnel, he was told he was faking his panic attacks.); and

(7) The fear of his dad's life being in danger because STPJ did not keep detainees six feet apart during the COVID-19 pandemic, as required by the CDC (McManus's father picked McManus up from STPJ upon his release).[9]

Based on the foregoing, McManus filed this *pro se* and *in forma pauperis* civil action pursuant to 42 U.S.C. § 1983, alleging violations of his Eighth and Fourteenth Amendment rights.[10]  The action was automatically referred to the assigned magistrate judge pursuant to Local Rule 73.2(A).[11]  McManus's initial complaint named only STPJ as a defendant.[12]  Because STPJ is not subject to suit under § 1983, McManus subsequently filed an amended complaint at the Court's direction,[13]  naming St. Tammany Parish Sheriff Randy Smith ("Smith") and STPJ Warden Daniel Fleischman ("Fleischman"), as defendants.[14]  McManus does not provide in the amended complaint whether he is suing Smith and Fleischman in their official capacities, individual capacities, or both.[15]  However, he does provide in his amended complaint that he "was trying to sue [STPJ] as a whole," and he does not allege any factual allegations against Smith and Fleischman.[16] These together lead the Court to believe that McManus meant to assert only official-capacity claims against Smith and Fleischman.

---

[9]     *See* R. Doc. 1; R. Doc. 12.
[10]    *See* R. Doc. 1; R. Doc. 12.
[11]    Local Rule 73.2(A) provides that: "The Clerk must automatically refer  the following categories of civil cases to the magistrate judges pursuant to 28 U.S.C. 636(b) and/or 636(c), as applicable, conditioned upon consent of the parties, if required by statute: (A) Applications  for post-trial relief, except in capital cases and in motions to vacate sentences pursuant to 28 U.S.C. 2255, made by individuals convicted of criminal offenses, prisoner petitions challenging the conditions of confinement, and prisoner cases brought pursuant to 42 U.S.C. 1983 . . ." LR. 73.2.
[12]    *See* R. Doc. 1.
[13]    After reviewing McManus's initial complaint, the assigned magistrate judge on the case at the time ordered McManus to file an amended complaint to name a proper defendant or defendants because STPJ as a party defendant is improper.  *See* R. Doc. 9 ("Having reviewed the complaint, the Court notes that the sole defendant named by plaintiff in this lawsuit is the St. Tammany Parish Jail.  However, that is improper.  The St. Tammany Parish Jail is merely a building, not a 'person' subject to suit under 42. U.S.C. § 1983 . . . Nevertheless, because plaintiff is proceeding *pro se*, the Court will afford him an opportunity to file an amended complaint.").  STPJ was never dismissed from the case.
[14]    *See* R. Doc. 12.
[15]    *See id*.
[16]    *Id*.

After McManus filed the amended complaint,[17] and Smith and Fleischman filed an answer,[18] the automatic referral of the case to the magistrate judge was vacated[19] because one of the parties to the action did not consent to trial before the magistrate judge under 28 U.S.C. § 636(c).[20]  The action was returned our docket, a scheduling conference was subsequently held, and a Scheduling Order was issued. [21]  Pursuant to the Scheduling Order, parties in the case were to file case-dispositive pre-trial motions in time to permit hearing thereon by August 2, 2023; discovery was to be completed by August 8, 2023; the pre-trial conference was set for September 7, 2023; and the trial was set for September 18, 2023.[22]  After the deadline to file case-dispositive pre-trial motions passed and neither party filed such motions (and no discovery had been conducted), parties jointly asked to continue all Scheduling Order deadlines;[23] this Court denied their request in part, allowing the parties to seek leave to file case-dispositive pre-trial motions by September 1, 2023, but leaving all other Scheduling Order deadlines intact.[24]  On September 1, 2023, Smith and Fleischman filed their motion for summary judgment.[25]  Six days later, on the day the pre-trial conference was originally set, September 7, 2023, the Court instead held a status conference.[26]

---

[17]     *Id.*
[18]     R. Doc. 17.
[19]     R. Doc. 20.
[20]     *See* R. Doc. 19.
[21]     *See* R. Doc. 21; R. Doc. 24.
[22]     R. Doc. 24 at 1–3.
[23]     *See* R. Doc. 27 for Defendants' motion to continue, and R. Doc. 28 for McManus's motion to continue, both filed after the July 18, 2023, deadline to file case-dispositive pre-trial motions.
[24]     R. Doc. 30.
[25]     *See* R. Doc. 35.  Smith and Fleischman filed the instant Motion with leave of court. *See* R. Doc. 34; R. Doc. 32.
[26]     The pre-trial conference did not proceed as planned because McManus failed to comply with the Court's standing pre-trial conference instructions by not providing pre-trial inserts for the proposed pretrial order.  *See* R. Doc. 39 at 1.  The Court excused McManus's failure to comply due to his *pro se* status and proceeded to hold a status conference to discuss Defendants' instant Motion. *Id.*

During the status conference, the Court gave McManus the opportunity to expound upon his claims both legally[27] and factually, and to orally oppose Smith and Fleishman's motion for summary judgment[28] because McManus did not file a written opposition.[29]  McManus expounded factually on two of his claims.  As for McManus's claim that the Holding Cell was "dirty," we asked for more factual information; McManus stated that the Holding Cell was so dirty, that if one were to take a white glove and wipe any surface, the glove would be dirty. As for his claim that he received inadequate medical treatment, McManus explained that he had anxiety attack (possibly two) in the Holding Cell; that he overhead "somebody" (unidentified/unknown) say that his anxiety attack was fake; and that he was not seen by the "nurse" (unidentified/unknown) for one to two hours after his alleged anxiety attack.

After the status conference, the Court also ordered McManus to produce additional legal, factual, and medical support for his claims no later than October 9, 2023; in so doing, the Court warned that failure to comply may result in dismissal of this lawsuit without further notice, pursuant to Fed. R. Civ. P. 41(b).[30]   The October 9, 2023 deadline set by the Court passed, with McManus filing documents into the record,[31] which did not sufficiently provide the legal, factual, and medical support the Court ordered McManus to produce during the September 7, 2023 status

---

[27]     The only legal citation McManus provided the Court with during the status conference was *Thomas v. Baca*, 514 F. Supp. 2d 1201 (C.D. Cal. 2007).  The Court distinguished *Thomas* from this case during the status conference.

[28]     R. Doc. 35.

[29]     *See* R. Doc. 39.  By September 7, 2023, McManus had not filed a written opposition to Defendants' motion for summary judgment and so, the Court allowed McManus an opportunity to orally oppose Defendants' arguments. *Id.* at 1–2.  Defendant did not meaningfully orally oppose Smith and Fleischman's motions for summary judgment.

[30]     *See* R. Doc. 39 at 2–3; *see also* Fed. R. Civ. P. 41(b) ("If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it . . .").

[31]     R. Doc. 42.  McManus provided a letter to the court, as well as attachments.  *See id.*; R. Doc. 42-1.  While the various attachments do include some of McManus's medical records, none of the records appear to be relevant to McManus's claims now before this Court because none of the records show that his pre-existing back injuries, generalized anxiety disorder, and panic disorder worsened due to his time spent at STPJ. *See generally* R. Doc. 42-1.

conference.[32]   Accordingly, Smith and Fleishman subsequently filed a motion to dismiss,[33] re-urging their motion for summary judgment.[34]   McManus filed an untimely opposition to Defendants' motion to dismiss.[35]   With leave of Court,[36] Defendants filed a reply in support.[37] Without leave of Court, McManus filed a sur-reply.[38]

## LEGAL STANDARD

Summary Judgment can be granted only where, with the evidence before the Court, the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is 'material' when its resolution might affect the case's outcome under governing law."  *Guillot ex rel. T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Guillot ex rel. T.A.G.*, 59 F.4th at 750 (quoting *S. Ins. Co. v. Affiliated FM Ins. Co.*, 830 F.3d 337, 343 (5th Cir. 2016)

The Court views "facts that are subject to genuine dispute . . . in the light most favorable to the non-moving party."  *Id.* at 749–50 (quoting *Taylor v. Riojas*, 592 U.S. 7, 7 n. 1 (2020)).  And when actual controversies exist—i.e., when both parties have submitted evidence of contradictory

---

[32]     *Compare* R. Doc. 42 (McManus's filing), *with* R. Doc. 39 (Minute Entry from September 7, 2023 status conference); *see also* R. Doc. 43-1 at 2 ("Defendants are unable to ascertain how [R. Doc. 42 is] relevant in any way to this Court's September 7, 2023, Order or to Plaintiff's claims."). It should be noted that on September 18, 2023, McManus filed a motion for a court order to obtain his medical records and a motion to continue.  *See* R. Doc. 40. The Court denied McManus's motion for a court order, directing McManus to contact his medical providers directly to obtain his medical records; the Court also denied McManus's motion to continue, reminding that failure to timely comply with Court orders may lead to financial sanctions and/or dismissal of claims or defenses. *See* R. Doc. 41.
[33]     R. Doc. 43.
[34]     R. Doc. 35.
[35]     R. Doc. 44. The submission date on Defendants' motion to continue, R. Doc. 43, was November 22, 2023, *see* R. Doc. 43-3.  McManus did not file an opposition until December 5, 2023.  *See* R. Doc. 44.  Pursuant to Local Rule 7.5, McManus should have filed his opposition no later than November 14, 2023.  *See* LR 7.5.  Accordingly, pursuant to Local Rule 7.5, the Court need not consider McManus's untimely opposition.
[36]     *See* R. Doc. 46; R. Doc. 45.
[37]     R. Doc. 47.
[38]     R. Doc. 50.

facts—the Court resolves them in favor of the non-moving party. *See id.* at 750 (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).

"There can be no genuine dispute as to a material fact where a party fails 'to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof a trial[,]'" as a "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Guillot ex rel. T.A.G.*, 59 F.4th at 750 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

## LAW AND ANALYSIS

### A.  Section 1983

Section 1983 authorizes the assertion of a claim for relief against a person who, acting under color of state law, deprived the claimant of any rights secured by the Constitution and the laws of the United States.  *See* 42 U.S.C. § 1983. The statute is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere. *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 n.3 (5th Cir. 1999).  The elements under § 1983 are that the conduct complained of (1) deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States, and (2) was committed by a person acting under color of state law.  *E.g.*, *Guillot ex rel. T.A.G.*, 59 F.4th at 751 (citing 42 U.S.C. § 1983); *Jones v. St. Tammany Par. Jail*, 4 F. Supp. 2d 606, 610 (E.D. La. 1998) (first citing 42 U.S.C. § 1983; and then citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).

Section 1983 claims can be brought against a public official in his or her individual or official capacity.  *Hafer v. Melo*, 502 U.S. 21, 23 (1991).  As noted, McManus does not specify whether he is suing Smith and Fleishman in their official capacities, individual capacities, or both.

We address both, in turn, and find that McManus's claims against Smith and Fleishman in any capacity fail.

### 1.  Official-Capacity Claims

"When an individual is sued in his or her official capacity, it is really a suit against the municipality that employs the defendant."  *Rombach v. Culpepper*, No. 16-556, 2018 WL 1202556, at *4 (E.D. La. Mar. 8, 2018) (Lemelle, J.) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)).  Such claims are analyzed under the *Monell* doctrine.  *Hafer*, 502 U.S. at 25.  To succeed on an official-capacity claim under *Monell*, the plaintiff must establish: (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom.  *Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2010) (quotations and citations omitted).

### a.  Official-Capacity Claims against Fleishman

Although not raised in Fleishman and Smiths' motion for summary judgment, at the outset we find that any official-capacity claims against Fleishman must be dismissed for a simple reason: Fleishman cannot be sued in his official capacity because he is not a policymaker.  Fifth Circuit case *Guillot ex rel. T.A.G. v. Russell* is on-point here; there, in affirming the district court's dismissal of an official-capacity suit against the then-warden of Ouachita Correctional Facility, the Fifth Circuit explained: "Official-capacity suits may be brought only against an official acting as a policymaker, such that his decisions represent the official policy of the local government unit . . . [and] [i]n Louisiana, the sheriff [not the warden] is the final policymaker."  *Guillot ex rel. T.A.G.*, 59 F.4th at 750–51 (citations omitted).

Further, an official-capacity suit against Fleishman would actually be a suit against STPJ.  *See Burge v. Parish of St. Tammany* ("Official capacity suits generally represent another way of

pleading an action against an entity of which an officer is an agent."); *Guillot v. Russell*, No. 20-01537, 2022 WL 1124186, at *4 (W.D. La. Apr. 14, 2022) (citations omitted), *aff'd sub nom. Guillot ex rel. T.A.G. v. Russell*, 59 F.4th 743 (5th Cir. 2023).   And STPJ is not subject to suit under § 1983.  *See, e.g.*, *Robinson v. Pinion*, No. 05-6364, 2006 WL 2710443, at *3 (E.D. La. Sept. 19, 2006).

Accordingly, any official-capacity claims asserted against Fleishman are dismissed.

### b. Official-Capacity Claims against Smith

Any official-capacity claims against Smith also fail. Section 1983 does not allow recovery against local government entities under a theory of *respondeat superior*; a plaintiff must show that the local government's policy or custom violated the plaintiff's constitutional rights.  *Hafer*, 502 U.S. at 24 ; *Monell* , 436 U.S. at 691; *Leffall v. Dall. Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994).  An official policy is one that is officially adopted and promulgated; whereas a custom is a persistent widespread practice, which although not officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents an official policy.  *See Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992) (citation omitted).

"[T]he custom or policy [must] serve[ ] as the moving force behind the [alleged constitutional] violation" at issue."  *Meadowbriar Home For Children, Inc. v. Gunn*, 81 F.3d 521, 533 (5th Cir. 1996).  Alternatively, the plaintiff must demonstrate that his injuries result from the policy's execution. *Fraire v. City of Arlington*, 957 F.2d 1268, 1277 (5th Cir. 1992). "The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire*, 957 F.2d at 1278).

There is no evidence establishing that an official policy or custom was the moving force behind McManus's alleged constitutional violations. Nor that McManus suffered injuries as a result of a policy or custom's execution. McManus never identified an official policy or custom, which is required. *See, e.g.*, *Murray v. Town of Mansura*, 76 Fed. App'x 547, 549 (5th Cir. 2003); *Treece v. Louisiana*, 74 Fed. App'x 315, 316 (5th Cir. 2003). He has been given ample opportunity to supplement the record with both legal and factual support for his claims.

Accordingly, any official-capacity claims asserted against Fleishman are dismissed.

### 2. Individual-Capacity Claims

To succeed on an individual-capacity § 1983 claim, a plaintiff must produce evidence establishing that the defendant, while acting under color of state law, was personally involved in the deprivation of a right secured by the laws or constitution of the United States, or that the defendant's wrongful acts were casually connected to such a deprivation. *James v. Tex. Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008).

At first blush, any individual-capacity claims asserted by McManus may be easily disposed of because there is *no* evidence to establish either Smith or Fleishman were personally involved in the actions on which McManus's claims are based. "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). Thus, as Smith and Fleishman's motion for summary judgment correctly points out "[t]here can be no individual capacity liability of . . . Smith or . . . Fleischman in this case."[39]

For this reason alone, any individual-capacity claims asserted against Smith and Fleishman are dismissed.

---

[39]   R. Doc. 35-1 at 22.

### a.  Qualified Immunity

Further, to the extent there is evidence establishing their personal involvement, Smith and Fleishman contend that they are entitled to qualified immunity as to McManus's § 1983 claims against them in their individual capacity.[40]  A "good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the **plaintiff** to show that the defense is not available." *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016) (quoting *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016) (per curiam)).  A plaintiff seeking to show that the qualified immunity defense is not available must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Cass*, 814 F.3d at 728 (quoting *Ashcroft v. al-Kidd,* 563 U.S. 731, 735 (2011)). We "have discretion to decide which of the two prongs of the qualified-immunity analysis to tackle first." *Ashcroft*, 536 U.S. at 735 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

As we have determined that McManus fails to adequately assert any individual-capacity claims against Smith and Fleishman, we need not consider their defense of qualified immunity on such claims. *See Walker v. Howard*, 517 F. App'x 236, 237 (5th Cir. 2013) (per curiam) ("The defense of qualified immunity applies only to suits against defendants in their individual capacities."  (first citing *Kentucky v. Graham,* 473 U.S. 159, 166–67 (1985); and then citing *Sanders–Burns v. City of Plano,* 594 F.3d 366, 371 (5th Cir. 2010))).

### B.  Separate Merit Analysis

The foregoing reasons are alone grounds for granting the motion for summary judgment. Nevertheless, the Court notes that the following claims also fail for another more fundamental reason: there simply is no underlying constitutional violation for many of McManus's claims.

---

[40]      R. Doc. 35-1 at 22–23.

*First,* McManus's allegations about the Holding Cell being "dirty" fail to establish constitutional violations.  For this claim, we focus mostly on the length of time McManus was in the Holding Cell.  In *Davis v. Scott*, 157 F.3d 1003 (5th Cir. 1998), the Fifth Circuit found no constitutional violation when a prisoner was locked in a "management cell" for three days, where the cell was, "according to Davis, 'just filthy, with 'blood on the walls and excretion on the floors and bread loaf on the floor.'" *Id.* at 1004–06.  The appeals court quoted the Supreme Court's holding that "the length of confinement cannot be ignored. . . . A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months." *Id.* at 1006 (quoting *Hutto v. Finney*, 437 U.S. 678, 686-87 (1978)). The Fifth Circuit found that "Davis did not suffer an extreme deprivation of any 'minimal civilized measure of life's necessities'" when he was confined in the cell for only three days. *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)).  Here, we cannot ignore the length of confinement: approximately twelve-hours.  Generally, "short term sanitation restriction[s] or problem[s], although admittedly unpleasant, do[] not amount to [] constitutional violations." *Magee v. Crowe*, No. 09-3142, 2010 WL 630011, at *8 (E.D. La. Feb. 19, 2010) (citations omitted).

*Second*, McManus's allegations about the showers being unclean showers fail to establish a constitutional violation. For ease of reference, McManus alleges he had to stand in between six (6) inches to one (1) foot of tater to wake a shower.[41]   In comparing McManus's allegations to applicable case law, it becomes clear that his allegations regarding the STPJ showers fail to rise to the level of a constitutional violation.  *See e.g.*, *McCarty v. McGee*, 2:06CV113-MTP, 2008 WL 341643, at *3 (S.D. Miss. Feb. 5, 2008) ("Plaintiff's claim that the shower he was forced to share with other inmates is polluted and covered in mold and fungus, causing him to catch athlete's foot

---

[41]     Defendants Randy Smith and Daniel Fleischmanand "expressly deny" McManus's allegations regarding the STPJ shower conditions in their motion for summary judgment.  *See* R. Doc. 35-1 at 11.

and ringworm, fails to rise to the level of a constitutional violation."); *see also id.* (collecting cases).

*Third*, McManus's allegations about holes in his blanket fail to establish a constitutional violation. *E.g.*, *Coleman v. Hogan*, No. 16-131-KS-MTP, 2018 WL 1998343, at *4 (S.D. Miss. Mar. 12, 2018) (finding that complaints about having holes in blanket "describe an uncomfortable situation" but "not a constitutional violation[]"), *report and recommendation adopted*, 2:16-CV-131-KS-MTP, 2018 WL 1998524 (S.D. Miss. Apr. 27, 2018); *see also Phillips v. East*, 81 Fed. Appx. 483, 485 (5th Cir. 2003).

*Fourth*, McManus's allegations that STPJ personnel were mean/rude to him fail to establish a constitutional violation. As noted, McManus alleges he was made fun of by an unidentified "cop."  The Fifth Circuit has foreclosed § 1983 claims premised on allegations of verbal abuse or than an officer issued a verbal threat, holding that without more, such a threat does not support a claim of a constitutional violation. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997) (holding "[i]t is clear that verbal abuse by a prison guard does not give rise to a cause of action under § 1983."); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir.1983) (holding that "[a]s a rule, 'mere threatening language and gestures of a custodial officer do not, even if true, amount to a constitutional violation.'" (citations omitted); *Bender v. Brumley*, 1 F.3d 271, 274 n. 4 (5th Cir.1993) (mere allegations of verbal abuse do not present actionable claims under § 1983).

*Fifth*, McManus's claim that STPJ failed to socially distance detainees during the COVID-19 pandemic, as required by the CDC, fails to establish a constitutional violation. The Fifth Circuit has held that a facilities' failure to comply with CDC guidelines does not rise to the level of a constitutional violation; and has further held the Constitution does not require officials to implement "long-term changes" or sanitize facilities to "the maximum extent required to avoid

the spread of COVID-19." *Valentine v. Collier*, 978 F.3d 154, 164 (5th Cir. 2020); *see also Snyder v. Bergeron*, No. 20-2158, 2021 WL 2822376, at *8 (E.D. La. July 7, 2021) ("Obviously, social distancing is particularly difficult to accomplish in penal institutions, and the mere fact that it was not achieved is an insufficient basis for finding a constitutional violation.").

That leaves us with two claims: (1) forced to sleep on the concrete floor of the Holding Cell and (2) inadequate medical treatment. Following our September 7, 2023, status conference with all parties, we ordered McManus to "produce legal, factual, and medical support for his claims" involving "his alleged back injury" (i.e., the claim that McManus was forced to sleep on the concrete floor) and "alleged panic attacks" (i.e., claim that McManus received inadequate medical treatment).[42] In doing so, we warned: "**Failure to comply with this Order may result in dismissal of Plaintiff's action without further notice**."[43] As noted, McManus filed some documents in the record, but they do not support his claims; they certainly do not supply relevant factual and legal support. We cite McManus's failure to comply with our order as additional support in dismissing McManus's claims concerning (1) forced to sleep on the concrete floor of the Holding Cell and (2) inadequate medical treatment. Fed. R. Civ. P. 41(b).

Further, the relatively brief exposures to conditions alleged here do not rise to the level of a constitutional violation. *See supra.* Additionally, inadequate medical treatment,[44] unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference on the part of a prison official to a prisoner's substantial risk of serious harm, nor does a prisoner's disagreement with his medical treatment, absent exceptional

---

[42] R. Doc. 39.
[43] *Id.* (citing Fed. R. Civ. P. 41(b)).
[44] For ease of reference, McManus alleges that he had two panic attacks; that he was denied proper medical treatment when he allegedly suffered his first panic attack; that he had to wait for two hours to be seen by STPJ medical personnel when he had his second alleged panic attack; and that when he finally saw STPJ medical personnel, he was told he was faking his panic attacks. *See supra.*

circumstances. *Gobert v. Caldwell*, 463 F.3d 339, 345–47 (5th Cir. 2006); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).  No exceptional circumstances exist in this action. McManus's disagreement about medical care and a two-hour delay before seeing medical personnel after a second alleged panic attack do not establish deliberate indifference; nor does his claim show exposure to a substantial risk of serious harm. He has no constitutional or other federally protected right to dictate how or when medical treatment would be provided. At most, his claims might arguably constitute negligence under state law, but not wanton disregard on part of his jailers or medical staff to withstand requirements under federal law.

New Orleans, Louisiana this 19th day of April, 2024

SENIOR UNITED STATES DISTRICT JUDGE